# In the United States Court of Federal Claims

No. 09-492C
(Filed November 5, 2010)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | * |
| | *   Motion to dismiss, RCFC |
| **MALINDA BALDWIN,** | *   12(b)(1); Contract Disputes Act |
| | *   of 1978, 41 U.S.C. §§ 601-613 |
| Plaintiff, | *   (2006); CDA claims against |
| | *   nonappropriated fund |
| v. | *   instrumentalities, 41 U.S.C. |
| | *   § 602(a); requirements for |
| **THE UNITED STATES,** | *   submitting a claim under the |
| | *   CDA, 41 U.S.C. § 605(a); tort |
| Defendant. | *   claim as adjunct to contract |
| | *   claim. |
| * * * * * * * * * * * * * * * * * * * * * * | * |

Bonnie M. Smith, Warner Robins, GA, for plaintiff.

Gregg P. Yates, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

Plaintiff filed a complaint in the United States Court of Federal Claims alleging breach of contract against a nonappropriated fund instrumentality. Defendant moved for dismissal pursuant to RCFC 12(b)(1), contending that plaintiff failed to satisfy jurisdictional prerequisites for filing a claim under the Contract Disputes Act of 1978, 41 U.S.C. § 605(a) (2006) (the "CDA"). The issue for decision is whether plaintiff's allegations concerning interference with, and frustration of, her contract satisfied her burden to establish jurisdiction under the CDA, given that she framed her complaint to plead a breach of contract cognizable under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006). Argument is deemed unnecessary.

## FACTS

Malinda Baldwin ("plaintiff"), a minority businesswoman, operates J & M Wireless and co-owns The Urban Wear Store, two small businesses in Columbus, Georgia. Compl.

filed July 28, 2009, ¶ 1.  Plaintiff holds temporary concessions with the Army and Air Force Exchange Service ("AAFES") to sell cellular telephone accessories and clothing items at Fort Benning, Georgia.  Id. ¶¶ 18-19.  Prior to obtaining these concessions, plaintiff had submitted a bid for the custom military jewelry concession at Fort Benning.  Id. ¶¶ 6-7.  AAFES rejected her bid, and plaintiff filed a protest of the award, which was denied on July 26, 2007.  Id. ¶¶ 13-14, 16.  Plaintiff admits that she did not "file any further appeals regarding the bid solicitation and did not file suit contesting the award within 12 months as required."  Id. ¶ 17.  While her complaint contains allegations concerning a bid protest, plaintiff emphasizes: "[T]his complaint is NOT a bid protest and is not intended to invoke jurisdiction pursuant to a bid protest . . . .  The information . . . is for background informational purposes only, as it relates to the current contract dispute."  Id. ¶ 4.

After the denial of her bid protest, plaintiff asserts  that AAFES personnel engaged in various acts of harassment against her, which she construes as breaches of her concession contracts.  Id. ¶¶ 31-41.  Specifically, plaintiff alleges that AAFES has "target[ed] [her] employees for minor infractions, whereas overlooking the same infractions from other business owners' employees."  Id. ¶ 23.  In addition to the targeting, AAFES's agents allegedly frustrated plaintiff's contractual performance by denying plaintiff "racks to display her cell phone accessories," id. ¶ 29; setting space deposit rates at a higher rate for plaintiff's businesses than for other businesses, id. ¶ 32; threatening to move plaintiff's stores to less profitable locations, id. ¶ 36; and insulting plaintiff's merchandise in front of customers, id. ¶ 38.  Plaintiff further asserts that AAFES subjected her businesses to competition in violation of "an implied contract of exclusivity" with AAFES.  Id. ¶¶ 48, 54.  Plaintiff asserts jurisdiction over her breach of contract claim under both 41 U.S.C. §§ 601-613, and 28 U.S.C. § 1491(a)(1).  Id. ¶ 3.

Defendant moved on October 27, 2009, to dismiss plaintiff's complaint for failure to meet the jurisdictional prerequisites of the CDA.  Resolution of this preliminary issue was stayed by a suspension for alternative dispute resolution from December 1, 2009, to August 4, 2010, which was ultimately unsuccessful.  Briefing concluded on September 27, 2010.

## DISCUSSION

Defendant cites the complaint as jurisdictionally defective because it did not allege that plaintiff submitted "any specific, written claim based upon her demand for contract damages," Def.'s Br. filed Oct. 27, 2009, at 6, as required by the CDA, 41 U.S.C. § 605(a).  Plaintiff counters that she submitted to AAFES "what she believed and intended was her final claim."  Pl.'s Br. filed Sept. 9, 2010, at 1.  Further, plaintiff contends that, even if she did not comply with the "technical" submission requirements, "[i]t is the intention [to submit a claim] that matters."  Id. at 2.  Plaintiff proffers an affidavit asserting that she contacted

the AAFES contracting officer about her claim.  [Unsworn] Affidavit of Malinda Baldwin, Sept. 4, 2010, ¶ 2.  In reply defendant faults plaintiff for "fail[ing] to include any details regarding her purported claim," such as its date, mode of delivery, the precise claim made to the contracting officer, and its exact sum.  Def.'s Br. filed Sept. 27, 2010, at 3 (emphasis omitted).  Failure to do so after defendant "expressly gave [plaintiff] notice of the deficiency in her pleadings in its motion to dismiss," id., defendant argues, underscores plaintiff's failure to meet the CDA's jurisdictional requirement.

I.  Standard of review

     Plaintiff bears the burden of proving that the Court of Federal Claims "possesse[s] jurisdiction" over her complaint.  Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001).  Plaintiff must prove jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  While the court will "normally consider the facts alleged in the complaint to be true and correct," id. at 747, "if [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, [plaintiff] must support them by competent proof."  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Thomson v. Gaskill, 315 U.S. 442, 446 (1942) (citing McNutt, 298 U.S. at 178); Daimlerchrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction.").

     The Tucker Act, 28 U.S.C. § 1491(a)(1), confers the Court of Federal Claim's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  Id. § 1491(a)(1).  This statutorily conferred jurisdiction "waives the Government's sovereign immunity for those actions" stated within the Tucker Act, but requires the court to construe that waiver towards the Government.  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); see Radioshack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("[W]aivers of the United States sovereign immunity are to be construed narrowly").  Because Congress amended the Tucker Act in 1970 to include claims against nonappropriated fund instrumentalities, such as AAFES, see Pub. L. No. 91-350, 84 Stat. 449 (1970) (codified as amended at 28 U.S.C. § 1346(a)(2) (2006), 28 U.S.C. § 1491(a)(1)), the Court of Federal Claims can hear claims against AAFES even though "the United States has not assumed the financial obligations of [the] entit[y AAFES] by appropriating funds to" it.  See El-Sheikh v. United States, 177 F.3d 1321, 1324 (Fed. Cir. 1999) (stating "general rule . . . that the Court of Federal Claims lacks jurisdiction . . . [when] the United States has not . . . appropriat[ed] funds . . . . is inapplicable . . .where Congress has otherwise indicated by special legislation" (internal quotations omitted)

3

(citations omitted)); see also Taylor v. United States, 303 F.3d 1357, 1360 n.* (Fed. Cir. 2002) (acknowledging contract claims against AAFES as statutory exception to nonappropriated funds doctrine).

Because Congress expressly brought unappropriated fund activities into the ambit of the Tucker Act, these claims have been made subject to the CDA. 41 U.S.C. § 602(a)(2) (2006) ("[T]his chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28 [of the United States Code] entered into by an executive agency or . . . the procurement of services[.]"); 28 U.S.C. § 1346(a)(2) (conferring jurisdiction in the Court of Federal Claims over cases with an express or implied contract with AAFES pleading damages in excess of $10,000); Pacrim Pizza Co. v. United States, 304 F.3d 1291, 1292-93 (Fed. Cir. 2002) (recognizing express statutory coverage for contracts with AAFES).

II. Jurisdiction under the CDA

The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). The CDA also provides that a contractor may appeal a final decision to the Court of Federal Claims. 41 U.S.C. § 609(a)(1). A valid CDA claim submitted pursuant to 41 U.S.C. § 605(a), along with a contracting officer's final decision, are jurisdictional prerequisites for this court to entertain a claim under the CDA. M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) ("This Court has found that jurisdiction thus requires both a valid claim and a contracting officer's final decision on that claim."); Ellett Const. Co., Inc. v. United States, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996) ("Thus, for the [Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim . . . and a contracting officer's final decision on that claim.").

"Since the CDA itself does not define the term 'claim,' [this court] look[s] to the Federal Acquisition Regulations (FAR) implementing the CDA for the definition." Maropakis, 609 F.3d at 1327. Interpreting the definition of "claim" explained at 48 C.F.R. (FAR) § 52.233-1 (2010), "[the United States Court of Appeals for the Federal Circuit] has identified three requirements for a valid CDA claim: (1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, (3) the demand must include a sum certain." H. L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1565 (Fed. Cir. 1995); see also Maropakis, 609 F.3d at 1327; Ellett, 93 F.3d at 1542. The claim submission must also be "clear and unequivocal" so as to give "the contracting officer adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987). While no requirement

exists that a claim "be submitted in any particular form or use any particular wording," id., a claim needs more than mere "intent to assert a claim without any communication by the contractor" comporting with the above elements, Maropakis, 609 F.3d at 1328.  Further, plaintiff can support jurisdictional allegations using extrinsic evidence such as an affidavit, see Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993), but a statement will not be considered an affidavit if unsworn, Maier v. Orr, 758 F.2d 1578, 1581 (Fed. Cir. 1985) (finding letters offered as affidavits deficient as unsworn).

The first element for a valid CDA claim is a written demand submitted to the contracting officer by the contractor.  Maropakis, 609 F.3d at 1327.  Plaintiff avers that she "contacted AAFES by telephone and letter regarding" her claim.  Baldwin Aff. ¶ 3.  However, plaintiff's complaint, brief, and affidavit are barren of any indication that she submitted a written demand to the contracting officer.  She identified the AAFES contracting officer as a recipient of telephone calls and the "Inspector General" as the recipient of reports.  Pl.'s Br. filed Sept. 9, 2010, at 2.

The third element for a valid CDA is claim a demand including a sum certain.  Maropakis, 609 F.3d at 1327.  Plaintiff does not argue in any of her filings nor aver in her affidavit that she submitted a sum certain demand to the contracting officer.  Instead, plaintiff insists that her intent to submit a claim matters more than actually satisfying the elements of a claim.  Pl.'s Br. filed Sept. 9, 2010, at 2.  Yet, "there is nothing in the CDA that excuses contractor compliance with the explicit CDA claim requirements."  Maropakis, 609 F.3d at 1329.  To downplay the lack of jurisdictionally required elements for a valid claim as merely "harmless error," Pl.'s Br. filed Sept. 9, 2010, at 2, is to ignore (or misunderstand) "that the CDA is a statute waiving sovereign immunity," which "must be strictly construed in favor of the [government]," Maropakis, 609 F.3d at 1329 (internal quotations omitted).

III.  Claims for tortious interference with contract performance

According to defendant, plaintiff's "implied contract of exclusivity," Compl. ¶ 48, flows from plaintiff's claim "that numerous vendors at Fort Benning are nonetheless the sole providers of certain goods and services and sell their goods and services free from competition," Def.'s Br. filed Oct. 27, 2009, at 3.  Therefore, defendant asserts that "[plaintiff] admits that she has no express clause in her contracts granting her the exclusive right to sell [her products] . . . at Fort Benning, or preventing AAFES from contracting with vendors to offer competing goods or services."  Id.

To the extent that plaintiff is arguing tortious interference with performance of her concession contracts, "the fact that the alleged breach is also tortious does not foreclose

Tucker Act jurisdiction." <u>Wood v. United States</u>, 961 F.2d 195, 198 (Fed. Cir. 1992) (internal quotations omitted); <u>Awad v. United States</u>, 301 F.3d 1367, 1372 (Fed. Cir. 2002); <u>see also</u> <u>Gregory Lumber Co. v. United States</u>, 9 Ct. Cl. 503, 525 (1986), <u>cited with approval in</u> <u>Jireh Consulting, Inc. v. United States</u>, 167 F. App'x 179, 180 n.1 (Fed. Cir. 2006). As explained above, this type of Tucker Act claim against a nonappropriated fund activity must be brought under the CDA. However, plaintiff is cautioned that the linchpin to such a valid contract claim must be a provision in one of her concession contracts. <u>L'Enfant Plaza Props., Inc., v. United States</u>, 645 F.2d 886, 892 (Ct. Cl. 1981) (finding that failure adequately to show connection between alleged wrongful conduct and any contractual obligation will result in dismissal of plaintiff's tort claim). No such connection has been averred in plaintiff's complaint.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion is granted, and the Clerk of the Court shall dismiss plaintiff's complaint for lack of subject matter jurisdiction.

2. Should plaintiff be able to perfect a timely claim to AAFES and later refile her suit, filing fees shall be waived, and the case shall be assigned to the undersigned.

/s/ Christine O. C. Miller
_____
**Christine Odell Cook Miller**
Judge

6